### JOE HEASTON TRACTOR & IMPLEMENT COMPANY, a New Mexico Corporation, Appellant,

v.

### SECURITIES ACCEPTANCE CORPORATION, a Delaware Corporation, Appellee.

### No. 5493.

United States Court of Appeals Tenth Circuit.

April 5, 1957.

Rehearing Denied May 25, 1957.

---

Owen B. Marron, Albuquerque, N. M., for appellant.

William P. Kelley (of Matthews, Kelley & Delephant), Omaha, Neb., and W. Peter McAtee (of McAtee, Toulouse & Marchiondo), Albuquerque, N. M., for appellee.

Before BRATTON, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The appellee, Securities Acceptance Corporation, a Delaware Corporation, hereinafter called "Finance Company", sued appellant, Joe Heaston Tractor & Implement Company, a New Mexico Corporation, hereinafter called "Guarantor", upon a contract which guaranteed payments due to the Finance Company from R. L. Claussen, d/b/a Dick Claussen Appliance, hereinafter called the "Debtor", and recovered judgment in the amount of $38,031.45, plus interest and costs. From this judgment the Guarantor appeals.

The facts are not in dispute. The Guarantor sold an appliance store to the Debtor, who took over the store, along with certain indebtedness of the Guarantor to the Finance Company. The Debtor needed financing in order to complete this transaction. To induce the Finance Company to furnish the necessary financing, the Guarantor "unconditionally guaranteed" the payment of all accounts then owed by the Debtor to the Finance Company and those to be incurred in the future.[1] The Finance Company made

---

1. The pertinent provisions of the contract are:

"In order to induce Securities Acceptance Corporation (hereinafter called the 'Finance Company'), to make a loan or loans, or renewals or extensions thereof, from time to time, to the Dick Claussen Appliance of 405 N. Fourth, Albuquerque, N. M. (hereinafter called the 'Dealer'), upon the security of new and used automobiles and other commodities under what is commonly known as the 'floor

loans to the Debtor and took back chattel mortgages from the Debtor covering appliances for the purchase of which the advance was made. None of these chattel mortgages were filed or recorded as permitted by law, until May 5, 1953, at which time the Finance Company discovered the impending insolvency of the Debtor. On June 8, 1953, an involuntary petition in bankruptcy was filed against the Debtor and he was adjudicated a bankrupt. The parties appear to agree that only $5,912.17 of the total amount loaned was secured by mortgages which were filed in time to prevent them from becoming preferences under the provisions of the Bankruptcy Act, 11 U.S.C.A. § 96. There remained $38,031.45 secured by chattel mortgages which did not meet the twenty-one day filing requirement of the aforesaid section of the Bankruptcy Act.

. The complaint alleged the bankruptcy, the default of the Debtor and a demand upon the Guarantor for payment in accordance with the provisions of the guaranty agreement. One of the defenses pleaded by the Guarantor was that the Finance Company took chattel mortgages from the Debtor covering merchandise for the purchase of which it advanced money, but failed to perfect the lien thereof by filing as required by law, and by reason thereof the loans made by the Finance Company were not "under what is commonly known as the floor plan of wholesale type of financing"; that by reason of such failure the subrogation rights of the Guarantor were lost and the Guarantor was released from its obligation. The validity of this defense is the only question presented by this appeal.

The contract of guaranty makes reference to secured loans but it does not specifically require the taking of mortgages or that the same, if taken, be recorded. Relying upon the law of suretyship as propounded in Stearns on Law of Suretyship, 5th Ed., 188, § 6.49, and 50 Am. Jur., Suretyship, § 118,[2] the Guarantor contends that the contract contemplates

plan of wholesale type of financing' and/or to induce Finance Company to purchase and discount, from time to time, notes and/or security instruments acquired by Dealer in connection with the retail sale by Dealer of new and used automobiles and other commodities, the undersigned hereby unconditionally guarantees to the Finance Company its successors or assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal and interest of all notes evidencing any such floor plan of wholesale financing transaction between the Dealer and the Finance Company and dated either before or after the date of this instrument, and the undersigned further so guarantees the prompt performance by the Dealer of all obligations and commitments of the Dealer to the Finance Company under any endorsement to or repurchase agreement executed by the Dealer to the Finance Company with respect to any retail paper acquired by the Finance Company from the Dealer in connection with retail sales of new and used automobiles and other commodities, and dated either before or after this instrument, all such obligations of the Dealer being hereinafter collectively called 'Liabilities'.

"The undersigned waives any notice of the incurring by the Dealer at any time of any of the Liabilities and waives presentment, demand, protest or notice of dishonor, nonpayment or other default with respect to any of the Liabilities. The undersigned grants to the Finance Company full power to modify or change terms of any of the Liabilities, to agree to forbearance with respect thereto, to consent to the substitution or exchange or release of collateral thereto, and extension of time of payment of the Liabilities."

2. 50 Am.Jur., Suretyship, § 118, reads as follows:
   "§ 118. Failure to Perfect or Record Security.—The collateral security taken by a creditor may require some act on the part of the creditor to make it a valid security. Where such is the case, the law implies an agreement on his part to perform that act. If he neglects or fails to do so and the security is thereby lost or impaired, the surety may be discharged to the extent of his loss or injury. Thus, it is quite generally agreed that where collateral security is given in the form of a mortgage, deed of trust, or similar instrument, the statute requires it to be filed or recorded in order

that security for loans will be taken and that in such cases there is an implied agreement that the lien of the security will be preserved by proper filing or recording, a failure of which relieves a guarantor to the extent of the loss sustained. We are of the opinion that the guaranty agreement is an absolute and unconditional guaranty and the foregoing rule of law has no application.

It is quite clear that the agreement covered every kind of retail sales upon which the Finance Company advanced money. It specifically guarantees, without limitation or condition, the prompt performance by the Debtor of all obligations and commitments to the Finance Company with respect to all retail paper by endorsement, or otherwise. Full power was granted to the Finance Company to modify or change the terms of any of the liabilities and to release any collateral thereto. Under the broad terms of this guaranty agreement, the Debtor and the Finance Company were free to handle their commercial paper as they saw fit. We think the guaranty was intended to cover, without condition, all good-faith loans made to the Debtor by the Finance Company in connection with the Debtor's appliance business in which commercial paper was taken. Otherwise there would have been no reason to include in the contract the provision that the Guarantor "unconditionally guarantees * * *, the due and punctual payment" of all notes evidencing floor plan financing transactions and "further guarantees the prompt performance" of all obligations and commitments of the Debtor under any "endorsement to or repurchase agreement executed by the Dealer to the Finance Company with respect to any retail paper. * * * " The record does not disclose what the security requirements are or what the custom is under general floor plan arrangements. Presumably they would differ in individual cases.[3]

■■ The law is settled that a guaranty is a collateral agreement to pay a debt or perform a duty for another in case of default which may be enforced separately from the primary obligation. It is not necessary to proceed against the primary debtor. An unconditional guaranty is one whereby the guarantor agrees to pay or perform a contract upon default of the principal without limitation. It is an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform. 38 C.J.S. Guaranty § 7; 24 Am.Jur., Guaranty, § 16; Vol. 18A, Words & Phrases, Guaranty, p. 661; Vol. 1, Words & Phrases, Absolute Guaranty, p. 146. A definition of conditional

to make it valid against innocent purchasers, it is the duty of the creditor to see that the instrument is properly filed or recorded; and if he negligently fails to act, the surety will be discharged to the extent of the loss thereby occasioned, or, it may be, completely discharged. On the other hand, there is some authority to the effect that a surety is not released by the failure of the creditor to file for record a mortgage held as collateral security, and the rule is inapplicable where the instrument constituting the security is invalid or not entitled to record, or where the creditor's failure to record the instrument is due to the fraud of the principal." (Footnotes omitted).

3. The Court made no findings as to the requirements of the floor plan arrangement, and a transcript of the evidence is not in the record. The Finance Company requested the following findings of fact:

"IX. That the plaintiff in none of the many thousand of floor plans of wholesale type of financing transacted with the defendant and the other Heaston Companies, filed or recorded the chattel mortgages taken, in the office of the County Clerk or with the Motor Vehicle Department of the State of New Mexico, and that such fact should have been known to the defendant and its president and majority stockholder, Joe Heaston.

"X. That the procedure and practice followed by the plaintiff in the extension of floor plan of wholesale type of financing is practically identical to the procedure and practice followed by other major finance companies doing business with the State of New Mexico, none of which followed the custom or practice of filing of chattel mortgages with the County Clerk or Motor Vehicle Department."

and unconditional contracts of guaranty and the liability of guarantors under them is well stated by this Court in Pavlantos v. Garoufalis, 89 F.2d 203, 206, where it is said:

"Contracts of guaranty are divided into two kinds. One is absolute or unconditional and the other is conditional. An absolute guaranty is an unconditional undertaking on the part of the guarantor that the person primarily obligated will make payment or will perform, and such a guarantor is liable immediately upon default of the principal without notice. A conditional guaranty is an undertaking to pay or perform if payment or performance cannot be obtained from the principal obligor by reasonable diligence. * * * [citing cases] An absolute guaranty, unlike a conditional one, casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor. Johnson v. Charles D. Norton Co., 6 Cir., 159 F. 361; Miller v. Northern Brewery Co., D.C., 242 F. 164; Karraker v. Ernest, D.C., 4 F.2d 404; Welch v. Walsh, 177 Mass. 555, 59 N.E. 440, 52 L.R.A. 782, 83 Am.St.Rep. 302; McMurray v. Noyes, 72 N.Y. 523, 28 Am.Rep. 180; Sherman, Clay & Co. v. Turner, 164 Wash. 257, 2 P.2d 688. Both presuppose default by the principal."

The guaranty was not gratuitous. The Trial Court found the guaranty was necessary to enable the Debtor to finance the purchase of the business. At the time the Guarantor sold the appliance business to the Debtor, there was owing to the Finance Company approximately $35,000. As an integral part of the sale, the Guarantor, by its guaranty, induced the Finance Company to extend floor plan financing to the Debtor and to continue loans which had been assumed by the Debtor on the purchase of the business. Considering the contract as a whole, the purpose for which it was given, together with all the surrounding circumstances existing at the time the guaranty was executed, we think it was the intention of the contracting parties that upon default the Guarantor was unconditionally bound to pay the liabilities of the Debtor as described in the guaranty instrument.

Judgment affirmed.