**UNITED STATES of America**
**v.**
**Sam VINCE and Patrina Vince.**
**Civ. A. No. 2792.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.
June 29, 1967.

**592**

Kathleen Ruddell, Asst. U. S. Atty., Eastern Dist. of Louisiana, New Orleans, La., for plaintiff.

Franz Joseph Baddock, Baton Rouge, La., for defendants.

WEST, District Judge:

This is a suit brought by the United States of America to recover what it alleges to be the balance due on two certain promissory notes executed by Vince Mechanical Contractors, Inc. in favor of the Louisiana National Bank of Baton Rouge, Louisiana, and later assigned to the Small Business Administration (SBA), an agency of the United States Government. The defendants, Sam Vince and Patrina Vince, are sued as guarantors on those loans.

On May 19, 1959, Vince Mechanical Contractors, Inc., a Louisiana corporation, executed its promissory note in the principal sum of $75,000, payable to Louisiana National Bank of Baton Rouge, Louisiana. This note bears interest at the rate of 6 per cent per annum on 10 per cent of the unpaid balance, and at the rate of 5½ per cent per annum on 90 per cent of the unpaid balance. On the same day the defendants, Sam Vince and Patrina Vince, executed their personal guaranty whereby they personally guaranteed payment of the note in case of default by Vince Mechanical Contractors, Inc.

On the same day, May 19, 1959, Vince Mechanical Contractors, Inc. also executed another promissory note in the principal sum of $35,000 payable to the Louisiana National Bank of Baton Rouge, Louisiana, bearing interest at the rate of 6 per cent per annum on the unpaid balance. In connection with this note the defendants, Sam Vince and Patrina Vince, also executed a guaranty similar to the one previously referred to. As further security for these loans, Vince Mechanical Contractors, Inc. also mortgaged certain real estate and assigned certain accounts receivable to the Bank. On July 29, 1960, the Louisiana National Bank assigned both notes, both guaranties, and their rights in the collateral, to the Small Business Administration, an agency and instrumentality of the United States of America. In November, 1960, Vince Mechanical Contractors, Inc. filed a voluntary petition in bankruptcy. The bankrupt estate was administered by the Trustee, and after the final account was approved by the Referee, the estate was closed and the Trustee discharged on June 12, 1962. Plaintiff brings this suit to recover the sum of $382.25 allegedly due and owing on the $75,000 note, and the sum of $22,961.64 plus interest on the principal balance of $16,904.44, at the rate of 5½ per cent per annum from April 20, 1962 until paid, allegedly due and owing on the $35,000 note.

The suit is defended on the ground that (1) a $4,000 item representing the amount paid by the Trustee in Bankruptcy for the expense of handling the sale of certain collateral which was purchased by SBA was improperly charged to the defendants, and (2) that the five accounts receivable pledged by Vince Mechanical Contractors, Inc. as security for these loans had not been properly administered, enforced or collected by plaintiff, and that hence, defendants, as guarantors of the loans, should now be given full credit for the entire amount of those accounts receivable, whether they have been collected or not.

As to the first item, i. e., the $4,000 charge for cost incurred in selling collateral, counsel for defendants, in his "final brief," has stated: "In this final brief we have omitted and dispensed any emphasis on the first (with right of the Court to consider it if the Court wishes), * * *." And then as to the

second item, i. e., the pledged accounts receivable, counsel continues "and rely entirely on the second, viz: The rights of defendants in the 'Five (5) Accounts Receivable' item under which we submit judgment should be rendered in favor of defendants."

Thus, there is no need now to go into the $4,000 item in any detail. Suffice it to say that even if defendants had decided to pursue this phase of the case, it is the opinion of this Court that their claim would be without merit.

It is further the opinion of this Court that defendants' position as to their alleged entitlement to a credit in the amount of the accounts receivable as they stood on the day of their assignment to the Louisiana National Bank or as they stood at the time of their assignment to SBA is also without merit. Exactly what happened to the five accounts receivable in question is not exactly clear from the record. They were apparently listed by Vince Mechanical Contractors, Inc. in their bankruptcy pleadings as an asset, after which the Trustee, who apparently never administered the accounts, made an informal disclaimer thereof. Later the SBA filed a "Petition to Reclaim Collateral" but the final disposition of these accounts is not made to appear in the record in the present suit. But the disposition of these accounts receivable is unimportant insofar as a determination of defendants' liability to the plaintiff on the notes in question in this suit is concerned. Defendants do not contend here that the accounts were collected and not credited to the balance due on the notes. They claim that the accounts were *not* collected or were *not* properly administered and because of a failure on the part of plaintiff to properly administer the accounts in question, defendants have been denied a credit that they would have received had the accounts been properly handled. But insofar as defendants' liability on the notes in question is concerned it matters not whether these accounts receivable were properly or improperly handled in the absence of a showing of willful neglect.

Defendants gave their unconditional guaranty for the payment of the notes in question in case of default by Vince Mechanical Contractors, Inc. Their guaranty did not depend upon the existence or nonexistence of the collateral in question. The guaranty which they gave reads in part as follows:

Guarantors grant " * * * to Bank full power, in its uncontrolled discretion and without notice to the undersigned [guarantors], * * * the following powers:

* * * * * *

"(d) To consent to the * * * release of all or any part of the collateral, * * *.

"(e) In the event of the non-payment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, * * * or to forbear from realizing thereon, all as Bank in its uncontrolled discretion may deem proper, * * *.

"The obligations of the undersigned [guarantors] hereunder shall not be released, discharged or in any way affected, nor shall the undersigned [guarantors] have any rights or recourse against Bank, by reason of any action Bank may take or omit to take under the foregoing powers.

"In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the undersigned, immediately upon the written demand of Bank will pay to Bank the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the undersigned. Bank shall not be required, prior to any such demand on, or payment by, the undersigned, * * * to pursue or exhaust any of its rights or remedies with respect to any part of the collateral."

■ A similar guaranty was involved in the case of United States v. Newton Livestock Auction Market, Inc., 336 F.2d 673 (CA 10—1964), which case is, in the Court's opinion, dispositive of the present controversy. In that case the Court held that the risk of the guarantor was not increased when the SBA failed and refused to insure collateral because:

"* * * their obligations were absolute and unconditional. By the terms of the guaranty contracts SBA could have made an entire release of the security for the loans and still have recovered from the guarantors."

Further supporting the plaintiff's position in this suit is the provision of the guaranty agreement which provides:

"* * * the rights of Bank in the collateral, shall not be released, discharged or in any way affected, nor shall the undersigned have any rights against Bank * * * by reason of any deterioration, waste, or loss * * of any of the collateral unless such deterioration, waste, or loss be caused by the willful act or willful failure to act of Bank."

Webster defines "willful" as "governed by will without regard to reason; obstinate; done deliberately; intentional." There has been no showing in this case, and indeed there has been no attempt to show that any "deterioration, waste or loss" of the collateral referred to was brought about by the willful act or the willful failure to act on the part of the Bank or the plaintiff. Thus, in the absence of a showing that the Bank or the plaintiff acted willfully or willfully failed to act, defendants, as guarantors, have acquired no rights against the Bank or the plaintiff with respect to the collateral in question.

■ Defendants cite and rely on the recent case of United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966). It is their contention that this case stands for the proposition that on matters pertaining to SBA loans the United States District Court must look to the relevant state law of the particular state involved in the transaction. They then argue that the guaranty involved here violates the provisions of Article 3037 of the Louisiana Civil Code, and that the alleged mishandling of the accounts receivable in question operated under the provisions of Article 3061 of the Louisiana Civil Code to discharge the defendants as sureties. There is no merit to these contentions. *Yazell* does stand for the proposition that in matters pertaining to SBA loans, unless there is an overriding federal interest present, the Court is not warranted in overriding applicable state law. But in the present case it is not necessary to override any state law in order to conclude that the plaintiff has a legal right to recover under the guaranty agreements involved in this suit. Article 3037 of the Louisiana Civil Code provides:

"The suretyship can not exceed what may be due by the debtor, nor be contracted under more onerous conditions.

"It may be contracted for a part of the debt only, or under more favorable conditions.

"The suretyship which exceeds the debt or which is contracted under more onerous conditions shall not be void, but shall be reduced to the conditions of the principal obligation."

■■ The guaranty agreements involved in this suit in no way violate Article 3037 of the Louisiana Civil Code. The guaranty agreements in no way obligate the guarantors for amounts in excess of what is due by the debtor, nor do they subject the guarantors to more onerous conditions than those imposed upon the debtor.

Article 3061 of the Louisiana Civil Code provides:

"The surety is discharged when by the act of the creditor, the subrogation of his rights, mortgages and privileges can no longer be operated in favor of the surety."

There is no evidence in this case that, by any act of the creditor, defendants

have been deprived of any "rights, mortgages or privileges" that they had under the guaranty agreements which they signed. Their guaranties for the payment of the notes in question in default of payment by the maker thereof were unconditional and absolute and did not depend upon the existence or non-existence of the accounts receivable in question. Since there is no question but that Vince Mechanical Contractors, Inc. defaulted on their obligation under the two notes in question, and since there is no question as to the validity of the assignment of the notes to the Small Business Administration, plaintiff is now entitled to recover from the defendants, as guarantors of those notes, the entire amount of the balance and interest due thereon. Judgment will be signed accordingly.