472 P.2d 703 (1970)
BEHLEN MANUFACTURING COMPANY, Plaintiff in Error,
v.
The FIRST NATIONAL BANK OF ENGLEWOOD and the First National Bank of Denver, Defendants in Error.
No. 70-025. (Supreme Court No. 22695.)
Colorado Court of Appeals, Div. I.
June 9, 1970.
Rehearing Denied June 25, 1970.
*704 Holme, Roberts & Owen, Donald C. McKinlay, Donald K. Bain, Denver, for plaintiff in error.
Simon, Kelley, Hoyt & Malone, Richard Simon, Englewood, for defendant in error First Nat. Bank of Englewood.
Hughes & Dorsey, George C. Gibson, Denver, for defendant in error First Nat. Bank of Denver.
Selected for Official Publication.
SILVERSTEIN, Chief Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
Plaintiff in error was plaintiff in the trial court and will be referred to as Behlen. Defendants in error will be referred to as the Banks. Behlen sued the Banks to recover approximately $190,000. The Banks filed motions to dismiss, which were granted by the trial court and Behlen was given 15 days to file an amended complaint or a motion for rehearing. It elected to stand on the complaint and filed a motion for rehearing or new trial. The court made findings of fact and conclusions of law, denied the motion and entered judgment dismissing the complaint. From this judgment Behlen appeals.
The material allegations of the complaint, all of which must be taken as true in this appeal are these:
Aero-Denver, Inc. ("Aero") was lessee of a 25 year lease with the City and County of Denver of property at Stapleton Airfield under which Aero was obligated to build a hangar. In April, 1963, Aero and its contractor, Livoni Construction Company, obtained a $260,000 construction loan from The First National Bank of Englewood which was acting for itself and as agent for The First National Bank of Denver, which participated in the loan. The borrowers executed a note, due December 1, 1963, to the order of the Englewood bank for the amount of the loan, and they and Behlen executed a loan agreement with the Banks. Behlen, which was furnishing materials for the construction of the hangar, also executed a guaranty under which it agreed to "absolutely and unconditionally guarantee" payment of the note.
The note was secured by a mortgage on the "Building together with all appurtenances thereto attached, not a part of the realty" and by an assignment of the lease, which were delivered to the Banks along with the note and other documents on April 22, 1963. The Banks had exclusive control of the security instruments from that date until about April 1, 1964, but failed to file them for record.
In November, 1963, an unsecured judgment creditor of Aero obtained a lien on the leasehold by recording its judgment in the sum of $7,385.26. Aero failed to pay the note by December 1 and it was extended to March 31, 1964, when Aero again defaulted. On demand of the Banks, Behlen paid the *705 Banks on April 1, 1964, the total amount then due, $262,296.65. The note, mortgage and lease assignment were at that time assigned to Behlen which then learned of the failure of the Banks to record the mortgage and assignment.
Behlen had them recorded on April 6, 1964, and on April 7 took possession of the property from Aero. On April 17 Aero filed a voluntary petition in bankruptcy and was adjudged a bankrupt. The trustee in bankruptcy contested Behlen's interest in the property and the referee determined that its interest was voidable and ordered the property to be surrendered to the trustee. While review of the order was pending a settlement was negotiated under which Behlen received $20,000 for its claim to the property and $90,000 to which it was entitled as an unsecured creditor.
Behlen asserts that the Banks' negligence in failing to record the assignment and mortgage resulted in a loss to Behlen of $177,000 in principal and interest and over $14,500 in fees and costs. In a second count Behlen asserts the Banks' failure to record the documents released it from its guaranty, and that the Banks were unjustly enriched in the above amounts. Subsequent to the judgment, Behlen received final payment as an unsecured creditor of the bankruptcy estate of $69,598.89 and has reduced its claim by that amount.
It is our opinion that the trial court erred in dismissing the complaint. The trial court apparently based its decision on the grounds that the complaint failed to allege either negligence or a duty owed by the Banks to the plaintiff and, further, that the contract between the parties imposed no duty on the Banks to record the mortgage and lease assignment. We disagree.

I
The complaint alleges that the Banks failed to record the mortgage and assignment and that, as a result of such negligence, the plaintiff was damaged, and that such failure to record released Behlen from its obligation so that the payment by Behlen resulted in unjust enrichment to the Banks. The complaint, as drawn, sufficiently states a claim against the Banks.
Except where the Rules of Civil Procedure otherwise require, the law is as set forth in Weick v. Rickenbaugh Co., 134 Colo. 283, 289, 303 P.2d 685, 688, as follows,
"Under the Rules of Civil Procedure it no longer is necessary to elect at the peril of the pleader a particular theory or `cause of action.' In most cases it is sufficient if the pleader clearly identifies the transactions which form the basis of the claim for relief, and if upon any theory of law relief is warranted by the evidence offered and received in support of the claim, it should not be denied because of the wrong technical `cause of action'."
The allegations of the complaint, the exhibits attached thereto and the exhibit identified at the hearing on the motions to dismiss and considered by the court established a prima facie claim against the defendants upon which relief could be granted.

II
The issue in this case is whether or not the contract between the parties gave to Behlen an interest in the security which the Banks had a duty to protect and, if so, whether the Banks violated that duty. It is our opinion that the complaint and exhibits do establish, prima facie, the duty and the violation thereof.
It is well settled that the rights of the guarantor as against the creditor are determined by the terms of the contract of the parties. 38 Am.Jur.2d, Guaranty § 126. Behlen and the Banks executed two agreements, the guaranty and the loan agreement. The borrowers also signed the loan agreement. The rights and obligations of the parties are to be determined from these documents and the law applicable thereto.
Behlen asserts that the law of suretyship and subrogation, as set forth in 50 Am.Jur., Suretyship §§ 109 and 118, is applicable to *706 an unconditional guaranty. These sections provide:
"109. Generally.A surety is entitled to be subrogated to the benefit of all the securities and means of payment under the creditor's control, and so, in the absence of assent, waiver, or estoppel, he is generally released by any act of the creditor which deprives him of such right. * * *"
"118. Failure to Perfect or Record Security.The collateral security taken by a creditor may require some act on the part of the creditor to make it a valid security. Where such is the case, the law implies an agreement on his part to perform that act. If he neglects or fails to do so and the security is thereby lost or impaired, the surety may be discharged to the extent of his loss or injury. * * *"
The Banks however contend that the above law is not applicable to contracts of unconditional guaranty in any case and is not applicable here because of the terms of agreement involved.
The guaranty agreement provided that Behlen "absolutely and unconditionally" guaranteed the payment of the note. Further, Behlen agreed "to fully indemnify and save the Bank harmless against all expense, loss, damage or injury arising in connection with the above note, or in the acceptance of any collateral therefor, or which may be incurred in enforcing collection of same * * *" (emphasis added). The loan agreement provided that the making of the loan was conditioned on the borrowers first delivering to the Banks the guaranty agreement of Behlen and an assignment of the lease (inter alia) and, to secure payment of the note," a mortgage executed jointly by [the borrowers] * * * constituting a first and prior lien upon the Hangar Building. * * *"
The above quoted sections of Am.Jur. accurately state the law as to suretyship and this law is equally applicable to an unconditional guaranty. The guarantor has a right of subrogation to the security upon payment of the obligation. Allen v. See, 10 Cir., 196 F.2d 608, is much in point. That case involved the right of a guarantor to the security. The guarantor paid the debt and the debtor was adjudicated a bankrupt. In holding that the guarantor had the full rights of a secured creditor the court said, at 610,
"It is well settled that where one secondarily liable is called on to make good on his obligation and pays the debt, he steps into the shoes of the former creditor. He becomes subrogated to all the rights of the creditor against the principal debtor, including the security given to secure the debt."
See also, 38 Am.Jur.2d, Guaranty, § 127.
Many authorities assert that the words "surety" and "guarantor" are in many respects synonymous. The Restatement of Security, § 82(g) states that in that work guarantor is a synonym for surety.
In 38 Am.Jur.2d, Guaranty, § 14, it is stated,
"Thus, in some situations a contract of guaranty is not distinguishable from a contract of suretyship. This is especially true when the contract of guaranty is absolute of unconditional, binding the guarantor to pay a definite sum at a specified time."
In Allen v. See, supra, the court used the words interchangeably although a guaranty contract was involved. So also in the case of St. Paul Fire & Marine Ins. Co. v. New Jersey Bank and Trust Co., 104 N.J.Super. 367, 250 A.2d 57, in which case the bank loaned money to finance a construction company. Payment was guaranteed by third parties. The bank failed to file notice of lending as required by New York law. The debtor became a bankrupt and its assets, including security given the bank, went first to pay off materialmen, leaving nothing to subrogate when the guarantors were called on to pay the debt. The court held that the bank's failure to protect the security released the guarantors (who were sometimes referred to in the opinion as *707 sureties) to the extent of the value of the security.
The case of D. W. Jaquays & Co. v. First Security Bank, 101 Ariz. 301, 419 P.2d 85, involves facts almost identical to those in the instant case. In that case there was an unconditional guaranty to pay a debt secured by a conditional sales contract which the lender failed to record. The debtor became bankrupt and the bankruptcy court denied the guarantor's claim as a secured creditor. The issues were the same and were there resolved in favor of the unconditional guarantor. The court held that the guarantor had a right of subrogation, that the creditor had a duty to preserve the security by recording, and that its failure to record the security released the guarantor to the extent of the market value of the security.
The court said, 419 P.2d, at 88,
"* * * Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. It is a creature of equity * * * Its purpose is the prevention of injustice and is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it. * * *"
Colorado is in accord with the above statement of the law. In Mulvihill v. First National Bank of Arvada, 80 Colo. 72, 249 P. 504 the bank received stock as security for a note signed by Mulvihill as a surety only and failed to take the action necessary to perfect the pledge. The maker failed to pay the note and the bank sought recovery against the surety, who refused to pay unless the bank delivered to him valid security. This the bank could not do because of its own failure to perfect the security. In reversing a judgment for the bank, the court said, at 76, 249 P. at 505,
"* * * The bank contends that no duty rested upon it as pledgee to make a memorandum on the books of the company, and that it cannot be held that it was negligent in failing to do so. This contention of the bank cannot be sustained. * * *
"When the bank accepted the certificate, the contract of pledge thereby created carried with it the implication that the certificate should be preserved and made effectual, to the end that it would be available to discharge the obligation. Robertson v. Bank, 67 Colo. 517, 522, 186 P. 542.
"When delivered to the bank, the certificate passed beyond the control of Mulvihill and his principal. The bank, by its possession of the certificate, had the exclusive dominion, control, and authority over it, and we cannot escape the conclusion that, being in the exclusive possession, the duty devolved upon it to make the registry upon the books of the company, as the only means of preserving the pledge from loss to itself and to the surety as an accommodation maker. The bank, as pledgee, became a trustee of the pledge for all concerned. Jones on Pledges and Collateral Securities, § 514. As soon as the right of surety was created, the bank could not, by any act of commission or omission, destroy the surety's interest in the pledge or impair it as security, without a violation of its trust. Nelson v. Williams, 22 N.C. 118.
"Under this state of facts the bank was clearly guilty of negligence. Robertson v. Bank, 67 Colo. 517, 521, 186 P. 542."
The Banks contend that by the terms of the guaranty agreement Behlen waived the obligation of the Banks to preserve the security. They assert that by indemnifying the Banks against loss in connection with the note or in "acceptance" of collateral Behlen released the Banks from all negligent acts. The law in this respect was clearly stated in Jaquays, supra, 419 P.2d at 89, as follows, "If the destruction or impairment of such a right (of subrogation) is to be waived by a guarantor, it should only be by the most unequivocal language in the guaranty *708 agreement." The language relied on by the Banks does not meet this test. The only waiver in the guaranty agreement has to do with notice of nonpayment, protest, extension of the note and partial payment. There is no waiver relating to the collateral. The indemnity agreement is limited to expense, loss or damage incurred in accepting the collateral or incurred in enforcing collection.
The Banks also assert that it was not their intent to rely on the security. However it is the intent of both parties, as evidenced by the agreement, that controls. The loan agreement specified the security that had to be furnished before any money would be paid out by the Banks and the indemnity agreement required the guarantor to pay all expenses of "enforcing collection of same." The documents evidence an intent that enforcible security be furnished as a prerequisite to the making of the loan and that the mortgage be a "first and prior lien." The guaranty agreement and the loan agreement disclose a reliance on the security by the Banks and by Behlen.
The cases relied on by the Banks do not support their contentions because in each of these cases the guaranty agreement contained specific waivers or other factors showing clearly that the guarantor did not and could not rely on the security. The principal case so relied on is Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp., 10 Cir., 243 F.2d 196. In that case the court pointed out that the contract did not require the taking of mortgages and stated, "Under the broad terms of this guaranty agreement, the Debtor and the Finance Company were free to handle their commercial paper as they saw fit." Also, in United States of America v. Klebe Tool & Die Co., Inc., 5 Wis.2d 392, 92 N.W.2d 868, heavily relied on by the Banks, the guaranty given to the Reconstruction Finance Corp. gave it broad powers with respect to the security. The R.F.C. could forbear from realizing on the collateral "in its uncontrolled discretion" and the contract provided, "The obligations of the undersigned [guarantor] hereunder shall not be released, discharged, or in any way affected * * * by reason of any action the Corporation [R.F.C.] may take or omit to take under the foregoing powers." (Emphasis added.)
It is our opinion that the complaint states a claim for relief against the Banks and should not have been dismissed. The judgment is reversed and the cause remanded with directions to reinstate the complaint in its entirety.
COYTE and PIERCE, JJ., concur.