**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**George H. PROCTOR et al.,
Defendants-Appellants.**

**No. 73-2756.**

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1974.

Howard C. Oliver, Montgomery, Ala., Griffin Sikes, Andalusia, Ala., for Proctors.

Barry C. Leavell, Montgomery, Ala., for Beesley.

Albert W. Copeland, Montgomery, Ala., for defendants-appellants.

Ira DeMent, U. S. Atty., Calvin C. Pryor, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before GODBOLD, SIMPSON and INGRAHAM, Circuit Judges.

SIMPSON, Circuit Judge:

We review and affirm a district court order granting the motion of the United States for summary judgment in a suit brought by the government under a guaranty agreement. The undisputed facts as they appeared from the pleadings and affidavits before the trial court may be simply stated.

In January, 1968 Beesley Packing Co. Inc. (Debtor) obtained a loan of $75,000 from the Covington County Bank of Andalusia, Alabama (Bank). In exchange for the loan, Debtor delivered to the Bank a promissory note in the principal sum of $75,000. The note was secured by mortgages on real and personal property of Debtor, and additionally secured by the personal guaranty of George Proctor, president of Debtor, and his wife Mary, and by the separately executed guaranty of Stella Beesley. These three persons were the principals of Beesley Packing Co. Inc. Mrs. Beesley's affidavit indicated that she left the active management of that corporation in September, 1969, turning its affairs over to Mr. Proctor.

The Bank perfected its security interest in the real property mortgaged to it by Debtor by recording the mortgage with the appropriate authority under Alabama law, the office of the Judge of Probate in Covington County, Alabama, where the real estate was located. The Bank failed, however, to perfect its security interest in the personal property of Debtor until October 1, 1970, when a financing statement was filed with the Secretary of State of Alabama. In the interim, on June 22, 1970, the Internal Revenue Service (IRS) had recorded a tax lien against the personal property of Debtor in the amount of $10,358.77.

In September 1970, the Debtor defaulted in its payments on the note and in November 1970, the Bank assigned the note and guaranty agreements to the Small Business Administration (SBA), an agency of the United States government. In March 1971, the Bank also assigned the underlying mortgages to SBA. In July 1971, SBA sued to foreclose its mortgage on both realty and personalty. Because of the prior IRS tax lien, SBA could not enforce its interest in the personalty mortgaged by Debtor. The realty was sold at foreclosure sale for $44,500. Application of this amount to the remaining amount owed by Debtor to SBA left a balance owing to SBA on the note of $9,583.50 plus interest.

The suit below, by the United States on behalf of its agency, SBA, was to collect the deficiency from Mr. and Mrs. Proctor and Mrs. Beesley under the terms of the individual guaranties of the loan executed by them. The government's Motion for Summary Judgment was opposed by the guarantors, whose argument was essentially: (i) that they as guarantors and secondary obligors had a right of subrogation on all claims by the Bank, or its assignee, the United States, which were unsatisfied by the prime obligor, the Debtor; (ii) that the

Bank, in whose shoes the government stood, had a corresponding duty to protect their right of subrogation; (iii) that the Bank breached this duty by failing to perfect its security interest in the personal property mortgaged by Debtor as collateral for the loan from the Bank; and that therefore, (iv) they, as guarantors, were entitled to release from their guaranties to the extent that their liability was occasioned by the creditor's failure to perfect the security interest in personalty.

The district court granted the government's Motion for Summary Judgment. The court found that the creditor's only duty arising under the agreements in question here was its duty to the prime obligor, the Debtor, not to waste the assets pledged as collateral for the Debtor's note. The court also found that the creditor was under the same obligation to the defendant-guarantors. The court specifically declined to hold that the creditor had any obligation to record arising under either the guaranty agreements or the recording provisions of the Code of Alabama. As to the former, the court ruled that a creditor does not implicitly assume additional duties regarding collateral by virtue of taking additional security for its loan in the form of a personal guaranty. As to the latter, the court noted that the purpose underlying the recording provisions is the protection of third parties who might, absent recording, have no knowledge of the existence of a security interest. No duty to record could be imposed upon the creditor on the basis of these statutes. These conclusions were the support for the summary judgment, from which Mr. and Mrs. Proctor only have appealed.

On appeal, the Proctors challenge the district court's finding that a creditor had no duty to protect a guarantor's right of subrogation and that failure to perfect the security interest was not a breach of that duty. In support of these contentions, the appellants rely, inter alia, upon Frederick v. United States, 5 Cir. 1967, 386 F.2d 481; D. W. Jaquays & Co. v. First Security Bank, 1966, 101 Ariz. 301, 419 P.2d 85; Behlen Mfg. Co. v. First National Bank of Englewood, 1970, 28 Colo.App. 300, 472 P.2d 703. Neither the cited cases nor other authorities consulted convince us that appellants' position is sound.

■ The starting point for analysis of the rights and duties of the creditor *vis a vis* its guarantors is the guaranty agreement executed by the Proctors. By the terms of that standard form agreement, the Proctors unconditionally guaranteed payment of the principal and interest upon the note upon demand by the Bank in the event of the Debtor's default.

The guaranty imposed no obligation —to protect the guarantors' right of subrogation generally or to perfect security interests in collateral specifically— in explicit terms upon the Bank. Thus, to determine the existence of any such obligation and to sustain the guarantors' position, we would need to find it in the statutory or common law of guaranty or to imply the obligation from the terms of the guaranty executed.

■ No such obligation may be implied from the agreement.[1] We need not decide whether such an obligation exists at common law or in the laws of Alabama, the *locus contractu*.[2] For it is

---

1. See Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp., 10 Cir. 1957, 243 F.2d 196. *Joe Heaston* involved a similar failure to record chattel mortgages. In refusing to find the failure a defense to suit on a guaranty agreement, the Tenth Circuit ruled that no duty to record could be implied from the language of the guaranty agreement, holding that the guaranty was abso-lute in its terms. The court found for the creditor.

2. The courts in D. W. Jaquays & Co. v. First Security Bank and in Behlen Mfg. Co. v. First National Bank of Englewood, text supra, found that such an obligation existed at common law. We implied that such a duty may exist by our statement in Freder-

clear from a reading of the terms of the guaranty that the guarantors in this case waived whatever rights they may have to protection of their subrogation interests to all but a limited extent. The guaranty agreement states in pertinent part:

> The obligations of the undersigned hereunder [the guarantors], and the rights of the Bank in the collateral, shall not be released, discharged or in any way affected nor shall the undersigned have any rights against Bank by reason . . . of any deterioration, waste, or loss by fire, theft, or otherwise of any of the collateral unless such deterioration, waste, or loss be caused by the *willful act or willful failure to act* of Bank. (emphasis supplied).

We construe this language as a clear waiver of any right to preservation of the collateral except for "deterioration, waste, or loss" resulting from the "willful act or failure to act" of the creditor.[3]

■ Another court, in considering identical language in a surety agree-ment, ruled that the term "willful" applied in the context of deterioration of the collateral refers to an act done with "an intent to bring about the deterioration of the property." United States v. Houff, W.D.Va.1962, 202 F.Supp. 471, 479–480. We implied as much in *Frederick, supra,* when we spoke of the Creditor's duty "to exercise good faith in preserving . . . the security" for the note. 386 F.2d at 486. There is no occasion to determine the precise meaning of the term "willful" in the context of the guaranty agreement before us here.[4] This record is barren of a claim by the Proctors that the Bank or its successor, SBA willfully failed to perfect their security interest in the personal property covered by the mortgage.[5]

The district court properly concluded that there was "no genuine issue as to any material fact and that the moving party (the plaintiff, the United States) was entitled to a judgment as a matter of law." Rule 56(c) F.R.Civ.P.

Affirmed.

---

ick v. United States, 5 Cir. 1967, 386 F.2d 481:

> A guarantor, who is in broad terms a type of surety, has a beneficial interest in collateral held by the creditor for the principal debt, and the creditor must exercise good faith in preserving, applying and disposing of the security and the proceeds, not only for the sake of the creditor's security but in recognition of the guarantor's obligation.

386 F.2d at 486.

3. This waiver clause distinguishes this case from *D. W. Jaquays & Co.* and *Behlen Mfg. Co.,* cited in the text supra. Those cases involved simplified forms of guaranty agreement containing no language of waiver comparable to that contained in the Agreement in this case. The court in *Behlen* specifically stated that the absence of a comprehensive waiver in the Agreement in that case was a significant factor in the court's reaching its decision. 472 P.2d at 707–708.

4. The existence of a willful act resulting in harm to the guarantor was apparently a significant factor in our decision in *Frederick, supra.* There, the SBA had itself purchased the security at foreclosure sale at a price alleged to be significantly below fair market value. No claims of willful encroachment upon the guarantors' rights are present in this case.

5. Neither in their answer nor in their affidavits in opposition to the Motion for Summary Judgment do the guarantors advance a claim of willful failure to file and perfect the security interests. Before this Court the Proctors assert only that the inability of SBA to sell the personal property contemporaneously with sale of the real property mortgaged by the Debtor resulted in a lower price being obtained for the real estate. This is insufficient to state a defense under the terms of the guaranty agreement. See *Austad v. United States,* 9 Cir. 1967, 386 F. 2d 147, 151.

The affidavit of Ms. Beesley, not a party to the appeal, stated that the Bank "negligently failed to perfect the security interest" in the personal property mortgaged by Debtor. Of course negligence is not the equivalent of willfulness, the prerequisite to a defense under the terms of the guaranty agreement.

GODBOLD, Circuit Judge (dissenting):

I respectfully dissent.

The keystone of the majority opinion is that the guarantors waived whatever rights they may have to protection of their subrogation interests except to a limited extent.[1] By finding waiver the majority avoid the substantive issue. The quoted provision relied upon as a waiver will not support the reliance my brothers place upon it. Fully stated, the clause reads:

*The obligations of the undersigned hereunder, and the rights of Bank in the collateral, shall not be released, discharged or in any way affected, nor shall the undersigned have any rights against Bank* by reason of the fact that any of the collateral may be in default at the time of acceptance thereof by Bank or later; nor by reason of the fact that a valid lien in any of the collateral may not be conveyed to, or created in favor of, Bank; nor by reason of the fact that any of the Liabilities may be invalid for any reason whatsoever; nor by reason of the fact that the value of any of the collateral, or the financial condition of the Debtor or of any obligor under or guarantor of any of the collateral, may not have been correctly estimated or may have changed or may hereafter change; nor *by reason of any deterioration, waste, or loss by fire, theft, or otherwise of any of the collateral unless such deterioration, waste, or loss be caused by the willful act or willful failure to act of Bank.* (emphasis added.)

The majority extract the language "deterioration, waste or loss" resulting from the "willful act or willful failure to act of [the] Bank" and conclude that the guarantors waived all rights in the security not included in this phraseology. I think this is a misconstruction. The provision is not a waiver clause. It is a release of rights by the [undersigned] guarantors. It is not a recognition that they have no rights existent *aliunde* this provision. What it is, and all it is, is a statement that in specified circumstances the guarantors are *not* released of their obligation and are *not* to have rights created in their favor. The particular circumstances centered upon are "deterioration, waste, or loss." First, it is incorrect analysis to imply a plenary waiver of all of one's rights from the exception to a clause that negatives the existence of rights in a particular circumstance. Second, the "deterioration, waste, or loss" provision is limited to physical loss or deterioration of the collateral. Austad v. United States, 386 F. 2d 147 (CA 9, 1967).[2] This same conclusion was reached in United States v. Houff, 202 F.Supp. 471 at 478–480 (W.D.Va., 1962), construing the same provision of the SBA guaranty form, and by the Supreme Court of New Hampshire construing the same language in a form of the Reconstruction Finance Corporation, RFC v. Faulkner, 101 N.H. 352, 143 A.2d 403 (N.H.1958).[3]

---

1. The majority do not question, indeed the guaranty agreement itself recognizes, that the guarantors are subrogated to the rights of the bank, and therefore of the SBA, if they discharge the debt.

2. *Austad* is the obverse of this case. The guarantor claimed that the government's action (allegedly willful forbearance from realizing on the collateral) was within the "willful act or willful failure" exception, that is, the exception was relied upon as the source of rights. In the instant case the guarantors do not rely upon this provision as a source of rights but upon the law of subrogation and suretyship.

3. As one ground of decision, United States v. Vince, 270 F.Supp. 591 (E.D.La., 1967), applied the "willful act or failure" language to exclude responsibility by the creditor for alleged failure to collect pledged accounts receivable. The court did not address itself to the question of whether the provision is limited to physical damage and did not refer to *Houff* or *Faulkner*. *Austad* was decided a few months later. This court affirmed per curiam on the separate ground that the provision of the guaranty agreement granting power to the creditor to realize or not realize on collateral at its discretion, operated as a waiver of more narrow rights provided

Since the provision on which the majority focus specifically negatives the existence of rights in the guarantor arising from physical loss or destruction of collateral (except that willfully caused) it leaves in effect rights of the guarantor existent under the law and arising from other types of damage to or destruction of collateral by the creditor.

The preceding portions of the provision, as quoted above, cover non-physical matters such as absence of a valid lien, equities and claims in favor of others, (etc.). If, as my brothers would have it, the "willful act or failure" exception impliedly excluded all other rights, these earlier provisions would be surplusage. Additionally, the guaranty agreement contains another provision which the majority opinion does not consider. It provides that "obligations of the undersigned hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against Bank, by reason of any action Bank may take or omit to take under the foregoing powers." The "foregoing powers" are grants by the guarantors to the creditor of authority to perform actions which, if taken by a creditor without the surety's consent, will discharge the surety. Among the enumerated grants of power are power to change the terms of the indebtedness, to grant extensions or renewals, to substitute, exchange or release collateral, and power to purchase collateral for the bank's own account. This clause is important for more than one reason. Its subject matter, as just pointed out, is to protect the creditor from consequences

normally visited upon him by his failure or wrong with relation to the security. This subject matter, specifically dealt with, is the same subject matter that the majority consider to be dealt with by implication in the "deterioration, waste or loss" provision. Second, the several acts enumerated in the grant of the "foregoing powers" do not include that here involved, withholding the security documents from recording.

The guaranty agreement seems to me to leave intact the responsibility of the creditor to record the security interests, if that is what lawyers and nonlawyer loan officers do under the practices of the jurisdiction. *Ejusdem generis* undergirds that reading.

With waiver aside, I would reach the substantive issue not reached by the majority and would hold that it is for a trier of fact to determine whether the bank in failing to file a financing statement fell below Alabama's standard of care for a prudent creditor in like circumstances and with similar security. Despite indications to the contrary, including statements by this court,[4] the Supreme Court has settled that, absent overriding federal interests, the law governing SBA loans is the law of the state where the transaction occurs, either *ex proprio vigore* or by adoption as federal law. United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966). There is no need to set out in this opinion what I view to be the clear Alabama law that if—and the if is for a trier of facts—the bank was negligent, the guarantors' obligation is reduced pro tanto.

by Louisiana law. Vince v. United States, 394 F.2d 462 (CA5 1968).

4. First National Bank, Henrietta v. SBA, 429 F.2d 280 (CA5, 1970).