**CHRYSLER FIRST BUSINESS CREDIT CORPORATION, Plaintiff–Appellant,**

v.

**Ykutiel KAWA; Shawn Lustigman; David Rosenholc; Sam Fireman; and Abraham Berneman, Defendants–Appellees.**

**No. 94CA1733.**

Colorado Court of Appeals, Div. V.

Feb. 22, 1996.

Wood, Ris & Hames, P.C., Donald B. Gentry, Denver, for Plaintiff–Appellant.

Eric J. Pringle, Denver, for Defendants–Appellees.

Opinion by Chief Judge STERNBERG.

Plaintiff, Chrysler First Business Credit Corporation, appeals a summary judgment entered in favor of defendants, Ykutiel Kawa, Shawn Lustigman, David Rosenholc, Sam Fireman, and Abraham Berneman. We affirm.

Defendants purchased an apartment building in 1973, executing a promissory note in the amount of $780,000 secured by a first deed of trust against the property in favor of the lender. The note and deed of trust were assigned to Great West Life Assurance Co. In 1977, defendants sold the property for the sum of $1,090,000 "subject to" the existing first note and deed of trust owned by Great West; however, the purchasers did not assume and agree to pay the promissory note.

The property was sold in 1979 for a purchase price of $1,650,000. This sale was also "subject to" the existing Great West first note and deed of trust with no assumption taking place. The new owner borrowed an additional $650,000 from Beneficial Business Credit Corporation in 1984, executing a promissory note secured by a second deed of trust against the property.

The owner ceased making payments on both notes in early 1987, and Chrysler purchased and took assignment of Beneficial's position in the second note shortly thereafter. To protect its interest in the property and to prevent default, Chrysler also made arrangements with Great West to make the payments on the first note.

Later in 1987, Chrysler initiated a judicial foreclosure proceeding of its second deed of trust against the then owners of the property. The district court entered a decree of foreclosure in favor of Chrysler in 1989, ordering a sheriff's sale of the property "subject to" the existing first deed of trust still owned by Great West. Chrysler entered the high bid of $300,000, purchasing the property in March 1990 at the sheriff's sale.

The next month, Chrysler entered into an agreement with Great West to purchase and take an assignment of all rights in the original note and deed of trust that defendants had executed in 1973. The principal balance on the note was now $447,237, and Chrysler paid the discounted sum of $400,000. Thus, Chrysler owned both legal title to the property from the sheriff's sale and the senior note and deed of trust against the property.

Chrysler sold the property for $375,000 in March of 1992, releasing the first deed of trust. Both the sale of the property and the release of the deed of trust were made without the knowledge or consent of the defendants. Thereafter, Chrysler commenced this suit against defendants to recover the balance on the 1973 promissory note.

Both parties moved for summary judgment; the trial court granted defendants' motion, holding that Chrysler's release of the first trust deed without defendants' consent constituted a material alteration of defendants' surety rights. This appeal followed.

I.

Defendants argued in the trial court and here that they occupied the status of sureties of the 1973 note after they sold the property "subject to" the note with no assumption of it by the new owners. We agree.

There is no dispute that, if defendants had sold the property and the purchasers had assumed and agreed to pay the first trust deed, then the trial court's ruling would be correct. Chrysler, however, argues that a lesser type of surety status resulted because of the sale of the property subject to the trust deed. We do not agree.

Suretyship may be defined as a contractual relation whereby one person engages to be answerable for the debt or default of another. A. Stearns, *Law of Suretyship* § 1.1 (J. Elder auth., 5th ed.1951).

When property is pledged or mortgaged as security for a debt, the land becomes the primary source for payment of the debt if the debtor does not pay. *Law of Suretyship, supra,* at § 1.3.

Courts in other states have found sellers in "subject to" transactions to be sureties of the mortgage. *Del Rio Land, Inc. v. Haumont,*

110 Ariz. 7, 514 P.2d 1003 (1973) (sale of property subject to a mortgage does not require that seller must use the funds paid to him by the buyer to pay off the mortgage; the burden of the mortgage remains on the property); *Occidental Life Insurance Co. v. McCracken*, 19 Cal.App.2d 239, 65 P.2d 130 (1937) (where vendee takes land subject to a mortgage, the land becomes the primary source for payment of the debt, and the relation of principal and surety arises); *Dorothy Edwards Realtors, Inc. v. McAdams*, 525 N.E.2d 1248 (Ind.Ct.App.1988) (where a party buys property subject to a mortgage, the land becomes the primary means of payment of the mortgage); *Conway Savings Bank v. Vinick*, 287 Mass. 448, 192 N.E. 81 (1934) (where a mortgagor conveys mortgaged land "subject to" the mortgage, a suretyship relation is deemed to arise and the land becomes the primary means for the mortgagor to secure payment of the debt); *Robinson v. Bogert*, 187 Misc. 735, 64 N.Y.S.2d 152 (1946) (mortgaged property is the primary source for the payment of the mortgage debt where property is sold subject to the mortgage).

■ If real property is sold "subject to" an existing mortgage, the buyer acquires the property burdened with that mortgage, and if the buyer does not also assume the mortgage, it takes the land subject to the encumbrances without a personal obligation to pay the debt. However, the buyer may lose the property if the mortgage debt is not paid, because the seller/mortgagor is not required to use the funds paid to it for payment of the mortgage; the property becomes the source of repayment for the debt. *Del Rio Land, Inc. v. Haumont, supra.*

■ We find the foreign cases cited above persuasive and adopt the rule espoused in them. Therefore, we hold that, when such a conveyance is made, a principal and surety relationship is deemed to arise between the land and the seller/mortgagor: the mortgagor being the surety and the land itself taking on the characteristic of the principal debtor. The seller/mortgagor is then entitled to all the protection which the law gives to sureties. *Braun v. Crew*, 183 Cal. 728, 192 P. 531 (1920).

Following these principles, we hold that defendants in this case occupied the status of sureties on the debt to Chrysler, that the real estate became the primary source of payment of the mortgage after defendants sold it "subject to" the existing mortgage, and that defendants were entitled to rely on the protection of this surety relationship.

II.

We do not agree with Chrysler that suretyship law operates to discharge the defendants of liability under the note only to the extent of the value of the property. In this regard, Chrysler argues that, even if defendants were sureties on the promissory note, they were not harmed by Chrysler's actions because Chrysler credited the note balance with the $375,000 of proceeds it received from the sale of the real estate. Thus, Chrysler asserts that because defendants received the full benefit of the underlying security for their suretyship, they are responsible to Chrysler for the deficiency on the note.

■ The security and means of payment for the Chrysler debt was the real property itself. Upon default, under principles of suretyship, defendants became primarily liable on the debt and were entitled to avail themselves of the designated source of repayment, *i.e.*, the property. *See Behlen Manufacturing Co. v. First National Bank*, 28 Colo.App. 300, 472 P.2d 703 (1970).

■ Defendants argue, and we agree, that their suretyship obligation was materially altered when Chrysler released their underlying security, the first deed of trust, without defendants' knowledge or consent. We further agree with their assertion that Chrysler's actions completely extinguished their subrogation rights in the property, thereby fully releasing them from personal liability on the promissory note.

■ It is fundamental that sureties have the right of subrogation to the creditor's position when a debt goes into default. As stated in *Behlen Manufacturing Co. v. First National Bank, supra*, 28 Colo.App. at 306, 472 P.2d at 706: "A surety is entitled to be subrogated to the benefit of all the securities

and means of payment under the creditor's control, and so, in the absence of assent, waiver, or estoppel, he is generally released by any act of the creditor which deprives him of such right."

When Chrysler released the first deed of trust on the property in 1992, the property was forever lost to defendants as a source of repayment of the Chrysler debt. This act materially altered the surety relationship between the parties by interfering with the defendants' access to their security.

■ When one undertakes a surety obligation, the surety undertakes a calculated risk; events which materially increase that risk without the surety's consent terminate the obligation. *People v. Smith*, 645 P.2d 864 (Colo.App.1982); *see also Port Distributing Corp. v. Pflaumer*, 880 F.Supp. 204 (S.D.N.Y.1995). Chrysler was not ignorant of the surety relation, but chose not to inform the defendants of the default, its foreclosure of the property, or its later release of the first deed of trust and sale of the property. This was a significant omission which deprived defendants of any opportunity to submit their own bid at the foreclosure sale and then dispose of the real estate as they deemed appropriate.

■ A suretyship must be considered strictly in accordance with its intent and terms. *Burkhardt v. Bank of America National Trust & Savings Ass'n*, 127 Colo. 251, 256 P.2d 234 (1953). Chrysler's acts increased the sureties' risk beyond what they intended when the suretyship was created. As sureties, defendants remained exposed to liability on the debt, but had no access to the agreed-upon source of repayment of the debt.

Because of our conclusions above, it is unnecessary to address alternate theories justifying the judgment.

The judgment is affirmed.

ROTHENBERG and CASEBOLT, JJ., concur.