**UNITED STATES of America**

v.

**Jack KROCHMAL and Theodora Krochmal.**

**Civ. No. 19378.**

United States District Court,
D. Maryland.

Oct. 21, 1970.

Stephen H. Sachs, U. S. Atty., and Alan B. Lipson, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Leonard S. Blondes and Blondes & Zaslav, Silver Spring, Md., for defendants.

THOMSEN, District Judge.

In this action the United States seeks to recover $3,208.16, plus interest, under a "guaranty" by defendants of a promissory note held by the Small Business Administration (SBA) as assignee of the payee bank. The issue presented is whether defendants have been released from their liability by reason of the stipulated facts.

On August 22, 1961, Flair-Acorn, Inc., executed and delivered to the Security Bank, Washington, D. C. (the Bank), its promissory note in the principal amount of $15,000 with interest as therein provided, payable in monthly installments of $250.00 beginning on September 22, 1961. The note was signed on behalf of Flair-Acorn, Inc., by defendant Jack Krochmal as its President and by Benjamin Herman as its Secretary. The note was secured by a deed of trust, also dated August 22, 1961 and recorded on the same date among the chattel records of Montgomery County, Maryland.

Jack Krochmal and Theodora Krochmal, the defendants herein, in their individual capacities guaranteed payment of that note by executing a separate instrument under seal (SBA Guaranty Form 148A), bearing the same date as the note, which read in pertinent part as follows:

### "GUARANTY

"In order to induce Security Bank (hereinafter called 'Bank') to make a loan or loans, or renewal or extension thereof, to Flair-Acorn, Inc. (hereinafter called the 'Debtor'), the undersigned hereby unconditionally guarantees to Bank, its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal of and interest on and all other sums payable, or stated to be payable with respect to the note of the Debtor, made by the Debtor to Bank, dated Aug. 22, 1961, in the principal amount of $15,000.00, with the interest  *  *  * . Such note, and the interest thereon and all other sums payable with respect thereto are hereinafter collectively called 'Liabilities.'

" *  *  *  The undersigned waives any notice of the incurring by the Debtor at any time of any of the Liabilities, and waives any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities and any obligation of any party at any time comprised in the collateral. The undersigned hereby grants to Bank full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Bank at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

"(a)  To modify or otherwise change any terms of all or any part of the Liabilities or the rate of interest thereon (but not to increase the principal amount of the note of the Debtor to Bank) to grant any extension or renewal thereof and any other indulgence with respect thereto, and to effect any release, compromise or settlement with respect thereto.
" *  *  *

"The obligations of the undersigned hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against Bank, by reason of any action Bank may take or omit to take under the foregoing powers.
*  *  * "

JACK KROCHMAL (SEAL)
THEODORA  KROCHMAL (SEAL)

On April 30, 1963, an instrument styled "Allonge" to the note of August 22, 1961, was executed by Flair-Acorn, by Mahar & Williams Printing Company, Inc. (Mahar), by the Bank, by defendants Jack and Theodora Krochmal,

and by Benjamin Herman and Marcia Herman, who had also executed a guaranty of said note.

The so-called "allonge" recited (a) the note and deed of trust of August 22, 1961, (b) the desire of Flair-Acorn to sell to Mahar the chattels covered by the deed of trust in consideration of Mahar assuming as co-obligor the repayment of the indebtedness then owing on the note, (c) the consent of the Bank to such sale and assumption, provided Flair-Acorn, the original maker, and the Hermans and the Krochmals, the original guarantors, "affirm their original and continuing obligation for the repayment of said Note; and provided, further, that Mahar assume full responsibility, as a co-obligor, for the repayment of said indebtedness; and provided, further, that Mahar execute a chattel deed of trust on certain equipment now owned by Mahar". Following those recitals it provided:

"NOW, THEREFORE, by consent of the parties hereto, as evidenced by their signatures hereto, the aforesaid Note, on SBA Form 154A, as identified in the caption hereof, is amended, effective as of this date, as follows:

"1. Flair-Acorn, Inc. does hereby affirm its original and continuing liability for the repayment of said Note, notwithstanding the assumption of the indebtedness by Mahar & Williams Printing Company, Inc.

"2. Benjamin Herman, Marcia Herman, Jack Krochmal, and Theodora Krochmal, original guarantors on said Note, do hereby affirm their original and continuing liability for the repayment of said Note, notwithstanding the assumption of the indebtedness by Mahar.

"3. Mahar & Williams Printing Company, Inc. does hereby assume full liability for the payment of the balance of principal and interest due on said Note, the same as if it were an original maker thereof.

"4. All other terms of said Note, except as amended by this Allonge, to remain the same."

Jack Krochmal signed the paper as President of Flair-Acorn and as Secretary of Mahar, as well as in his individual capacity. Theodora Krochmal also signed in her individual capacity.

On November 12, 1964, the Bank assigned the note to SBA, without recourse, and transferred to SBA the guaranty of the Krochmals and the guaranty of the Hermans.

Sometime thereafter Lannes Williams or Mahar or both sold out of trust part of the property which secured the note, and defendants herein advised SBA and the Bank of that fact.

Thereafter, SBA entered into negotiations with Williams and Mahar, as a result of which a settlement agreement was entered into between SBA and Williams and Mahar, under which the SBA received on February 14, 1966, from Williams and Mahar a cashier's check in the amount of $4,275.00. The following recital on the reverse of the check was intended by Williams to be the agreement between the parties:

"RE: Flair Acorn, Inc., X-EMP-163, 613 Wash, the proceeds of this check are consideration of Agreement by S.B.A. with Lannes B. Williams to effect settlement as follows: of the proceeds hereof, $3,800.00 applied in restitu- (sic) of pledged equipment, balance of $475.00 applied to second deed of trust on property of Lannes B. Williams & Barbara M. Williams, his wife, which trust is to be paid in monthly installments of $50.00 commencing April, 1966, and payable the 15th of each and every month thereafter until $3,405.00 trust is paid in full and endorsement hereon by duly authorized official of the United States or deposit to account thereof to operate as release of all claims to civil or criminal action as against Lannes B. Williams, Mahar & Williams Co., Inc., and Maverick Lithograph Co., Inc.

arising from above-numbered transaction saving only such cause of action as might arise on 2nd trust deed in a civil suit for collection or foreclosure."

SBA required that the reference to possible criminal action be deleted. Otherwise, the agreement set out on the back of the check represents the understanding pursuant to which SBA received the $4,275.00. On November 24, 1967, SBA received $3,405.00 in discharge of the balance of the $3,405.00 trust obligation referred to in the recital on the reverse of the check, leaving a balance due of $3,208.16, plus interest.

In addition to the present suit against the Krochmals, SBA has filed a companion suit in the District of Columbia against the Hermans on their guaranty.

The Krochmals, defendants herein, argue that the release of Mahar "has the effect of also releasing [them] the Guarantors of the original agreement". This argument overlooks the fact that the Krochmals agreed, inter alia, in the Guaranty quoted above, that their obligations under the Guaranty "shall not be released, discharged or in any way affected * * * by reason of any action Bank may take or omit to take" under the powers granted to it in the Guaranty, including the power "to modify or otherwise change any terms of all or any part of the Liabilities * * * to grant any extension or renewal thereof * * * and to effect any release, compromise or settlement with respect thereto * * *."

■ Such an agreement is valid and binding on a guarantor and will be enforced by the courts. 38 Am.Jur. (Guaranty § 79), p. 1087; Ibid, § 84, p. 1091; 38 C.J.S. Guaranty § 83, pp. 1252–1253; Restatement, Security, § 122. See also Kaufman v. Penn. Mut. Life Ins. Co., 62 App.D.C. 37, 64 F.2d 160, 162 (1933); Empire Millwork Corp. v. Lapides, 155 F.Supp. 765, 766 (D.Md.1957). It is not necessary to decide whether Maryland law or District of Columbia law controls in this case, because no conflict between the laws of

the two jurisdictions has been cited or found. This Court concludes that under the common law of both jurisdictions, the language of the "Guaranty" amounted to a consent by the guarantors that the release of the principal debtor did not discharge the guarantors.

Both parties have discussed the possible applicability of the Uniform Negotiable Instruments Law (NIL), which was in effect in both Maryland and the District of Columbia at the times the note, the "Guaranty" and the subsequent "Allonge" were executed.

Section 120 of the NIL (Art. 13, § 141, Md. Anno. Code, 1957 ed., and Title 28, § 28–802, D.C.Code, 1961 ed.) provides that a person secondarily liable *on* the instrument is discharged by various acts, including:

"(5) By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved;

"(6) By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

Defendants contend that they were discharged from their liability as guarantors by § 120(5) because the release did not reserve the holder's right of recourse against the guarantors.

There has been a conflict in the decisions, where § 120 of the NIL applies, as to whether the agreement of the party secondarily liable on the instrument that he will not be discharged by a release of the principal debtor is effective to prevent his discharge, in view of the difference between the provisions in (5) and (6). See Anno. 169 A.L.R. 753. If it were necessary to decide the question, this Court would hold that even under the NIL the provisions in the guaranty, quoted and discussed above, would be sufficient to prevent the discharge of the guarantors by the release of the

principal debtor. See Arlington Nat. Bank v. Bennett, 214 Mass. 352, 101 N. E. 982 (1913); Howard Nat. Bank & T. Co. v. Newman, 115 Vt. 61, 50 A.2d 896 (1947).

■ But it is not necessary to decide the possible effect of § 120 of the NIL in this case, because defendants herein were not liable *on* the note, as indorsers or otherwise. Their guaranty was made on a separate paper and was affirmed on a separate paper. Section 18 of the NIL (Art. 13, § 39, Md. Anno. Code and Title 28, § 28–119, D.C.Code) provides that no person is liable *on* the instrument, whose signature does not appear thereon, except as otherwise expressly provided in the NIL. Section 31 of the NIL (Art. 13, § 52, Md. Anno. Code and Title 28, § 28–302, D.C.Code), provides that an indorsement must be written on the instrument itself or upon a paper attached thereto.

No cases have been cited and few have been found in which a guarantor who was not liable *on* the instrument has attempted to rely upon § 120 of the NIL as the basis for a defense of discharge. One, however, is from the District of Columbia, Ober v. Riggs Nat. Bank, 31 A.2d 877 (D.C.Mun.App.1943). In that case the defendant had purchased encumbered property without assuming liability on a note which was secured by a deed of trust on the property; but in order to obtain an extension, he agreed in a separate instrument to pay the note. Thereafter, he sold the property to one who did not assume the indebtedness, but who obtained an extension without the defendant's knowledge or consent. The defendant relied on §§ 63 and 120(6) of the NIL. The appellate court said: "In our opinion, however, defendant was not at any time a party to or liable on the note. His agreement was wholly collateral to and legally independent of the note, and the code sections cited have no application." 31 A.2d at 879.

The D.C. Court cited and quoted from Bergmann v. Puhl, 195 Wis. 120, 217 N. W. 746, 747, 56 A.L.R. 915. In that case, after a note had been delivered, a guaranty of the vendors was annexed. The suit was brought on the note against the makers and the guarantors. The latter demurred on the ground of misjoinder of actions. On appeal the demurrer was sustained. The Court said: "The plaintiff wholly misconceived the effect of attaching a separate document, executed subsequently to the making and delivery of a promissory note, to the note itself." 217 N.W. at 747, 56 A.L.R. at 919.

Then, after quoting the applicable section of the NIL, the Court continued:

"The only exception to the rule that an indorser becomes such only by placing his signature upon the instrument is that where the back of the instrument has been covered by indorsements or other writing, leaving no room for further indorsements, a strip of paper called an 'allonge' may be attached to the instrument and subsequent indorsements may be written thereon. When these conditions are complied with, the writing upon the allonge has the same effect as if it were made upon the instrument itself. * * *" 217 N.W. at 747, 56 A.L.R. at 919.

The so-called "Allonge" in the case at bar, does not fall within the definition or purpose of an allonge, as indicated by the Wisconsin and District of Columbia cases and by the definition in Black's Law Dictionary (4th ed. 1957). It served several purposes, including a modification of the "Guaranty" agreement involved in this case. It did not make defendants herein parties liable *on* the note.

Although the Uniform Commercial Code went into effect in both Maryland (Feb. 1, 1964) and the District of Columbia (Jan. 1, 1965) before the SBA released Mahar on the note, the effect of the release on the guarantors' rights and liabilities in this case are determined under the applicable law in effect prior to the Uniform Commercial Code. Both jurisdictions have provided in the legislation adopting the Code that transac-

tions validly entered into before the effective date of the Code and the rights, duties and interests flowing therefrom remain valid thereafter, and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by the Code as though such amendment or repeal had not occurred. Art. 95B, § 10–102(2), Md. Anno. Code (1964 Repl.); Comments at beginning of Title 28, subtitle I, D.C.Code (1967 ed.).

Judgment will be entered for the United States in the amount of $3,208.-16, with interest on that amount from November 24, 1967, a total of $3,765.38.