**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Julius C. IMMORDINO and Joanne Immordino, Defendants and Third Party Plaintiffs,**

**v.**

**Joseph C. COSTA et al., Third Party Defendants.**

**Civ. A. No. C–4511.**

United States District Court,
D. Colorado.

Dec. 3, 1974.

James L. Treece, U. S. Atty., by Carolyn J. McNeill, Asst. U. S. Atty., Denver, Colo., for plaintiff.

William W. Webster, Denver, Colo., for defendants and third party plaintiffs.

Blaine L. Boyens, Denver, Colo., for third party defendants, Joseph C. Costa, Dorothy M. Costa, Edward F. Langevin and Waymeth S. Langevin.

Edward R. Gleason, Littleton, Colo., for third party defendants, William R. Myers and Elizabeth Myers.

## OPINION AND ORDER

CHILSON, District Judge.

The United States brought this action on behalf of the Small Business Administration (SBA) to recover on a promissory note in default pursuant to certain guaranty agreements securing the note. The note was executed on August 10, 1966, to secure a loan in the amount of $45,000.00 made by SBA to C & S Sales, Inc. d/b/a Building Products Inc. The note was secured by various items of collateral including four separate guaranty agreements executed respectively by Julius C. and Joanne Immordino, defendants and third party plaintiffs, Joseph C. and Dorothy M. Costa, third party defendants, Edward F. and Waymeth S. Langevin, third party defendants, and William R. and Elizabeth Myers, third party defendants. All parties have stipulated that "without the written guaranty agreements by all of the respective parties the loan would not have been granted to the maker of the subject promissory note." Stipulation of Facts filed January 21, 1974.

All four of the guaranty agreements are identical in form [SBA Form 148 (11–62)] and provide in pertinent part as follows:

"In order to induce . . . 'SBA' . . . to make a loan . . . to C & S Sales Co., Inc., dba Building Products, Inc., . . . the undersigned hereby unconditionally guarantees to SBA . . . the due and punctual payment when due . . . of the principal of and interest on and all other sums payable . . . with respect to the note of the Debtor . . . As security for the performance of this guaranty the undersigned hereby mortgages, pledges, assigns, transfers and delivers to SBA certain collateral (if any), listed in the schedule on the reverse side hereof. The term 'collateral' as used herein shall mean any funds, guaranties, agreements or other property or rights or interests of any nature whatsoever, or the proceeds thereof, which may have been, are, or hereafter may be, mortgaged, pledged, [etc.] for the performance of this guaranty or the payment of the Liabilities or any of them or any security therefor.

". . . The undersign hereby grants to SBA full power, in its un-

controlled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and SBA at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

"(a) . . . .

(b) To enter into any agreement of forbearance with respect to all or any part of the Liabilities, or with respect to all or any part of the collateral, and to change the terms of any such agreement;

(c) . . . .

(d) To consent to the substitution, exchange, or release of all or any part of the collateral . . .;

(e) In the event of the nonpayment when due . . . of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, as a whole or in such parcels of subdivided interests as SBA may elect . . ., or to forbear from realizing thereon, all as SBA in its uncontrolled discretion may deem proper. . . .

"The obligations of the undersigned hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against SBA, by reason of any action SBA may take under the foregoing powers.

"In case the Debtor shall fail to pay all or any part of the Liabilities when due, . . ., the undersigned, immediately upon written demand of SBA, will pay to SBA the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the undersigned . . . ."

Following the default by the maker of the note, SBA negotiated for settlements with the Costas, Langevins and Myers.

As a result of these negotiations, SBA agreed to and did completely release these guarantors from their obligations under their respective guaranty agreements. SBA accepted $4,300.00 from the Costas, $1,000.00 from the Langevins, and $1,500.00 from the Myers' in full consideration for these releases. Stipulation of Facts filed January 21, 1974; Plaintiff's Response to Request for Admissions filed March 20, 1974.

Following the complete release of these guarantors, plaintiff filed this action on November 17, 1972, against defendants to recover the remaining uncollected balance owing on the note, plus interest, from defendants pursuant to their guaranty agreement.

Defendants filed their answer on January 10, 1973, asserting that defendants did not consent to any settlement or release entered into by SBA and the third party defendants and therefore that "such release . . . has the effect of releasing Defendants." In addition defendants claimed a set-off on the grounds that SBA disposed of certain other items of collateral securing the note and diverted the proceeds to the payment of another promissory note which defendants did not guaranty. In this regard defendants, by their amended answer filed January 31, 1974, seek an accounting from SBA in order to determine the amount of the set-off if any.

Plaintiff claims that an adequate accounting has been made (see affidavits of Robert C. Murray and Milam H. Gray filed February 19 and 20, 1974, and affidavit of Milam H. Gray filed April 8, 1974), and that SBA was expressly authorized by the guaranty agreement to apply these proceeds to the preexisting note. Thus, plaintiff contends that defendants are not entitled to any set-off.

On January 19, 1973, defendants filed a third party complaint against the Costas, Langevins and Myers for contribution "for all sums that may be adjudged against said Defendants and Third Party Plaintiffs in favor of the Plaintiff."

The Myers then filed, on February 14, 1973, counterclaims and cross-claims against the Costas, Langevins and Immordinos "for all sums that may be adjudged against these [third party] Defendants and in favor of the Third-Party Plaintiffs."

Motions to dismiss the third party complaint, counterclaims and cross-claims were denied by this Court on April 30, 1973.

Third party defendants, Costa and Langevin, filed an answer to the counterclaims and cross-claims of the other third party defendants on June 8, 1973. Included therein, these third party defendants asserted a cross-claim against the Myers for contribution, and a counterclaim against the plaintiff, alleging that the release of their obligations by SBA was not full and complete and demanding $40,000.00 as exemplary damages from the plaintiff. Plaintiff's motion to dismiss or for summary judgment regarding this counterclaim, filed on August 8, 1973, and supported by a memorandum of law, is now pending.

On January 21, 1974, all parties submitted a stipulation of facts describing the circumstances surrounding the execution of the promissory note, the guaranty agreements and the release by SBA of the third party defendants' obligations. This stipulation was intended to allow the Court to determine the question of the Immordinos' liability, if any, to the plaintiff. The parties agreed that, "[t]he disposition of this issue could encourage in depth discussions that would possibly lead to a settlement of this action without the necessity of trial." The stipulation of facts was not intended to bear on the question of contribution between and among the defendants and the third party defendants.

Subsequent to the filing of the stipulation of facts, all parties have filed motions for summary judgment and extensive memoranda of law supporting their respective positions. Defendants contend generally that they are not liable on their guaranty under the common-law rule that the discharge of one or more co-obligors releases and discharges all remaining co-obligors even though the original obligation has not been fully satisfied. Alternatively defendants contend that their liability is limited to their proportionate share of the amount still owing on the note under C.R.S. §§ 76–1–1, 2, 3 (1963).[1]

Plaintiff, on the other hand, contends that Federal law must control the disposition of this case and that the Colorado statute is therefore inapplicable; that the defendants' guaranty was absolute and unconditional; and that defendants expressly agreed to allow SBA to release some or all of the collateral, including guaranties, in its uncontrolled discretion, without affecting in any way defendants' obligations.

Hearing on all motions for summary judgment was held in this Court on September 24, 1974, with all counsel present.

Jurisdiction of this action is properly based upon 15 U.S.C. § 634 (functions, powers and duties of SBA) and 28 U.S.C. § 1345 (jurisdiction over actions brought by the United States as plaintiff).

---

1. "All joint obligations and covenants shall hereafter be taken and held to be joint and several obligations and covenants." C.R.S. § 76–1–1 (1973).
"A creditor of joint debtors may release one or more of such debtors, and such release shall operate as a full discharge of such debtor so released, but such release shall not release or discharge or affect the liability of the remaining debtor. Such release shall be taken and held to be a payment in the indebtedness of the full proportionate share of the debtor so released." C.R.S. § 76–1–2 (1963).
"In case one or more joint debtors are released, no one of the remaining debtors shall be liable for more than his proportionate share of the indebtedness, unless he is the principal debtor and the debtor released was his surety, in which case such principal debtor shall be liable for the whole of the remainder of the indebtedness." C.R.S. § 76–1–3 (1963).

## I. LIABILITY OF IMMORDINOS TO THE UNITED STATES

██ Simply stated, defendants' primary contention is that their liability on their guaranty agreement was either totally excused or substantially limited by SBA's release of the third party defendants for consideration. Defendants claim that if the common-law rule of release applies, the release by SBA of one or more coguarantors without defendants' consent operates to release all coguarantors even though the total amount owing to plaintiff has not been paid. Alternatively, defendants claim that if C.R.S. §§ 76–1–1, 2, 3 apply (see footnote, p. 614) their liability is limited to their proportionate share of the debt outstanding.

Notwithstanding defendants' characterization of the common-law rule, the true statement of the general rule, as stated in 38 Am.Jur.2d Guaranty § 91, is as follows:

"Although there is authority that the release by the creditor of one of two or more coguarantors, who are either jointly, or jointly and severally, liable for the secured obligation, releases the remaining guarantors, the general rule is that the release is not automatic and that the coguarantors will be released or discharged only to the extent that they are injured. . . . . *Also, there is no release when the creditor specifically reserved his rights against the unreleased guarantor.*" (emphasis added) (footnotes omitted)

Moreover, there is no release when a guarantor specifically consented to the release of one or more of his coguarantors. See 38 Am.Jur.2d Guaranty § 84. The liability of a guarantor depends, in the first instance, upon the construction and application of the guaranty agreement itself, United States v. Newton Livestock Auction Market, Inc., 336 F.2d 673, 677 (10th Cir. 1964); 38 Am.Jur. 2d Guaranty § 73, and when the guaranty is unconditional by its terms, the guarantor is charged with "an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform." Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp., 243 F.2d 196, 199 (10th Cir. 1957). In these circumstances the guarantor's liability, upon default by the principal debtor, becomes equal to that of the principal debtor. 38 Am.Jur.2d Guaranty § 74.

In this case, it is clear by the express terms of the guaranty agreement that the defendants agreed to be unconditionally bound upon the principal debtor's default. It is also clear from the express terms of the guaranty agreement, that defendants agreed to grant SBA extensive authority to deal with the collateral, including the coguarantors' guaranty agreements, in any manner it deemed appropriate. See text of agreement, supra, pp. 612–613. SBA's power in this regard included the right "[t]o consent to the . . . release of all or any part of the collateral." Defendants specifically agreed that:

"The obligations of the undersigned [Immordinos] hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against SBA, by reason of any action SBA may take or omit to take under the foregoing powers."

The question of whether the common-law rules of release or whether the Colorado statutes govern the determination of this action is thus academic and immaterial since defendants expressly agreed that the release of coguarantors would not affect defendants' liability in any way. Defendants are thus absolutely and unconditionally liable to plaintiff to the full extent of the debt guarantied.

## II. IMMORDINOS' THIRD PARTY COMPLAINT FOR CONTRIBUTION FROM THIRD PARTY DEFENDANTS

██ Defendants claim, by way of a third party complaint, that third party defendants are responsible for contribution in regard to any sums for which de-

fendants are held liable to plaintiff. The essential nature of the doctrine of contribution is discussed in Vickers Petroleum Co. v. Biffle, 239 F.2d 602, 606 (10th Cir. 1956) as follows:

"Contribution is an equitable doctrine based on principles of fundamental justice. It arises '. . . when any burden ought, from the relationship of the parties . . . to be equally borne and each party is in aequali jure, contribution is due if one has been compelled to pay more than his share.' 'The right to contribution is not dependent on contract, joint action, or original relationship between the parties; it is based on principles of fundamental justice and equity.'" (footnotes omitted)

See generally 18 Am.Jur.2d Contribution.

In assessing the equities in this case, it is important to note that each of the coguarantors signed identical guaranty agreements pursuant to which they became jointly and severally unconditionally liable to plaintiff for the total debt secured by the guaranty agreements. All guarantors agreed that the release of all or part of one or more coguarantor's obligations would not affect their individual responsibilities in any way. This mutual understanding is the only indication of the relationship of the parties, and that relationship was such that each party accepted full responsibility for the guarantied debt. It would be inappropriate, indeed unjust, to change that relationship now and hold the third party defendants liable in contribution.

Defendants contend that an action for contribution is one founded upon an implied contract between and among the coguarantors that they would be mutually responsible for their proportionate shares in the event the principal debtor defaulted on its obligation. On the contrary, there is nothing to support this contention. Instead the information available, primarily the guaranty agreements themselves, indicates an express agreement that each set of guarantors assumed responsibility for the entire obligation on default with full knowledge and understanding that some or all of the other coguarantors could be released by SBA. This being so, defendants are not entitled to contribution from their coguarantors, third party defendants.

## III. IMMORDINOS' CLAIM AGAINST PLAINTIFF FOR SET-OFF AND ACCOUNTING

██ Defendants' final claim is set out in their amended answer at pp. 3–4 as follows:

### SIXTH DEFENSE

"The Plaintiff took exclusive control of all of the assets of C & S Sales Company, Inc., d/b/a Building Products Inc., the maker of the promissory note which is subject matter of this action, for the purpose of liquidating same. As a result thereof certain equipment, which was held as security for subject note was sold and the proceeds applied to a prior existing note [2] held by the Plaintiff. Further, that Plaintiff has at no time made any accounting to the Defendants showing credits for any assets liquidated by Plaintiff or for credits as a result of settlement of other co-guarantors obligations.

"WHEREFORE, Defendants pray that . . . if judgment is rendered in [plaintiff's] favor that Defendants be allowed as a set-off the amount, if any, of the collateral security which was released or diverted by Plaintiff."

See also defendants' "Fourth Defense" in their original answer at p. 2, filed January 10, 1973.

The affidavit of Robert C. Murray at paragraph 5, filed on February 19, 1974, provides an explanation for, and the procedure followed in, the application of

2. This note was executed by C & S Sales d/b/a Building Products, Inc., in return for a $25,000.00 loan made by SBA in participation with the Central Bank & Trust Company on May 26, 1965. This loan was guarantied by third party defendants, Costa and Langevin, but not by defendants. See affidavit of Robert C. Murray filed February 19, 1974.

certain proceeds to the first ($25,000.-00) note rather than to the second ($45,000.00) note:

"5. Small Business Administration did credit proceeds received from the disposition or release of some of the collateral only to the first loan. This procedure was in accordance with the terms of the bank—SBA Participation Agreement [attached as Exhibit E] by which the bank was entitled to 10 percent of any amount received in repayment of said loan and could and did demand that amounts received by SBA from collateral which was pledged for both be applied first to the reduction of the $25,000 loan before any amounts were credited toward the reduction of the $45,000 loan made by SBA alone. . . ."

The various affidavits submitted on behalf of plaintiff, including various transcripts of account, reflect the manner in which these proceeds were applied in accordance with the bank—SBA Participation Agreement.

Defendants expressly granted SBA the power to deal with the proceeds in this manner and waived any rights against SBA, presumably including any right to a set-off, as a result of SBA compliance with the bank—SBA Participation Agreement. Defendants' guaranty agreement provides, before listing the powers expressly granted to SBA (see text, *supra,* pp. 612–—), as follows:

"The undersigned [Immordinos] hereby grants to SBA full power, in its uncontrolled discretion and without notice to the undersigned, *but subject to the provisions of any agreement between the Debtor or any other party and SBA at the time in force* to deal in any manner with the . . . Collateral. . . ." (emphasis added)

The guaranty agreement further provides that:

"The obligations of the undersigned [Immordinos] hereunder, and the rights of SBA in the collateral shall not be released, discharged or in any way affected, *nor shall the under-signed have any rights against SBA . . . by reason of the fact that any of the collateral may be subject to equities or defenses or claims in favor of others or may be invalid or defective in any way . . . ."* (emphasis added)

Having thus agreed, and having full knowledge of the provisions of the bank—SBA Participation Agreement, defendants' claim for a set-off is without merit.

Defendants' claim for an accounting of the disposition of these proceeds is likewise unfounded for the reasons that such an accounting has already been provided. See affidavits of Robert C. Murray and Milam H. Gray together with attached exhibits.

Plaintiffs' affidavits in support of the amount due it are not otherwise controverted and summary judgment should enter in its favor and against the defendants, Julius C. Immordino and Joanne Immordino, jointly and severally, in the principal amount of $40,155.55, together with interest thereon, from December 29, 1969, to this date, at the rate of 5½% per annum in the amount of $14,359.67 for a total judgment of $54,515.22, together with the plaintiff's costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.

The defendant's motion for summary judgment against the plaintiff should be denied.

The motions for summary judgment by the third party defendants for dismissal of the defendants' third party complaint should be granted and the third party defendants should have judgment against the third-party plaintiffs for their costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.

In view of the summary judgment of dismissal of the third party complaint, the various cross-claims and counterclaims asserted by the third party defendants are moot and should be dismissed.

It is therefore ordered that summary judgment enter in favor of the plaintiff

**618**

and against the defendants, Julius C. Immordino and Joanne Immordino, jointly and severally in the amount of $54,515.22, together with the plaintiffs' costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.

It is further ordered that the defendant's motion for summary judgment against the plaintiff is hereby denied in all respects.

It is further ordered that the motions of the third party defendants for summary judgment of dismissal of the third party complaint is hereby granted and the third party defendants shall have judgment against the third party plaintiffs for their costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.

It is further ordered that the cross-claims and counterclaims asserted by the third party defendants are moot and are hereby ordered dismissed.